UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 21-cr-00217 |
| VERSUS | CHIEF JUDGE HICKS |
| RONNIE K HONGO JR (01) | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

Ronnie K. Hongo ("Defendant") is charged with one count of possession of methamphetamine with intent to distribute, one count of carrying and using a firearm during drug trafficking, and one count of possession of a firearm by a convicted felon. Before the court is Defendant's Motion to Suppress (Doc. 25) which seeks to suppress evidence seized during the execution of a search warrant at Defendant's home. Defendant argues that the search warrant was deficient. For the reasons that follow, it is recommended that the motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. The following facts were established. Deputies with the Sabine Parish Sheriff's Office began investigating Defendant as part of their narcotics investigations. The deputies began making controlled buys at Defendant's residence. The first round of controlled buys occurred in August 2020. A confidential informant accompanied a third party named Willie Lloyd and purchased methamphetamine

from the residence on three occasions. Willie Loyd was charged in connection with those buys, but Defendant was not. Tr. 5-6.

In March 2021, a confidential informant conducted two controlled buys at Defendant's residence. The informant was equipped with audio and video surveillance.[1] Tr. 8. Following the second controlled buy, deputies began conducting surveillance on the residence. An individual named Donald Ray Aldredge left the residence in a vehicle, and deputies initiated a probable cause traffic stop. Methamphetamine, marijuana, and drug paraphernalia were found on Aldredge's person, and he was arrested. Tr. 9-10.

Lt. Jesse Branam then drafted a search warrant and accompanying affidavit for the residence. The affidavit in support of the warrant stated:

> Affiant requests the issuance of a search warrant to locate and seize any amount of any crystal-like substance, currency, ledgers, any firearms, and any other evidence pertaining to the selling of illegal narcotics, within the residence, and all curtilage, vehicles, described above for his apprehension and any other evidence tending to prove the commission of the offense of: LA R.S. 40:967 et seq, distribution, possession with intent to distribute, or possession of schedule II (methamphetamine).

The affidavit also stated, "The affidavit in support of this warrant is made part of this warrant." Doc. 26-1. The warrant itself included a paragraph that described the place to be searched and stated: "Affiant requests the issuance of a search warrant to locate and seize all items listed in the affidavit." Branam first sent the warrant to the District Attorney's Office for review, then he presented then presented the warrant to Judge Stephen Beasley, who signed it. Tr. 10.

---

[1] The recordings of the controlled buys were filed as Government Exhibits 1-2.

Lt. Branam, Sgt. Josiah Steinke, Deputy Brennan Jones and other deputies executed the warrant.[2] They knocked on the door three times and announced, "search warrant." The door was unlocked, so the deputies entered the home. Defendant's girlfriend, Ms. Garner, was standing close to the front door, and deputies asked her to step outside along with children that were in the house. Tr. 16-17. Defendant, who was standing in the kitchen, was escorted outside to Sgt. Steinke while the other deputies performed a protective sweep of the home. Tr. 17.

Sgt. Steinke attempted to pat Defendant down for officer safety, but Defendant pulled away from him. Defendant ran away, and Steinke tased him. Defendant continued to resist, but officers were able to put him in handcuffs and place him in Deputy Brennan Jones' patrol vehicle. Tr. 41. Jones advised Defendant of his Miranda rights and Defendant acknowledged that he understood. Tr. 51-52. Jones searched Defendant and found $2,000 cash, two gold teeth, some coins, and insurance and debit cards on Defendant's person. Tr. 52. Because Defendant had been tased, an ambulance was called to the scene. Defendant was transported to Sabine Medical Center. Tr. 17.

During the search of the home, the deputies found a yellow backpack that contained a large brick of methamphetamine and a Crown Royal bag that contained a large amount of methamphetamine, crack cocaine, and hydrocodone pills packaged for sale in small quantities. Tr. 17-18. A handgun was found on a nightstand in the master bedroom. Tr. 42.

---

2 Recordings of the execution of the search warrant were filed as Gov. Exs. 10-11.

After Defendant was released from the hospital, he was brought to the detention center. Defendant Tr. 21-22. Sgt. Steinke turned on his body camera and recorded his interaction with Defendant at the detention center. Tr. 45, Gov. Ex. 8. Steinke asked Defendant if he understood his Miranda rights. Defendant said he did and signed a rights form. Defendant told Sgt. Steinke that everything the deputies found in the home belonged to him and that he had bought the handgun two or three months earlier. Tr. 45.

**Analysis**

Defendant argues that the search warrant for the residence was invalid because it did not describe with particularity the items to be seized and did not include language that served to incorporate the affidavit, which contained the list of items to be seized. Defendant asserts that the Leon good faith exception does not save the warrant because the warrant was so facially deficient that the executing officers could not have reasonably presumed it was valid. Defendant argues that all evidence seized during the search, as well as the incriminating statements made by Defendant, should be suppressed.

To determine whether a search warrant violates the Fourth Amendment, the Fifth Circuit applies a two-part inquiry. United States v. Allen, 625 F.3d 830, 835 (5th Cir. 2010). First, does "the seizure fall within the good-faith exception to the exclusionary rule?" Id. If the good-faith exception doesn't apply, the second question asks whether the issuing judge "had a substantial basis for believing there was probable cause for the search." Id.

In this case, the court need not reach the second step because the good-faith exception applies. Under the good faith exception, if an officer's 'reliance on the

magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable,' a court need not suppress the fruits of the search. United States v. Flanders, 468 F.3d 269, 271 n. 2 (5th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)).

The good faith exception is inapplicable to the execution of a warrant only in the following "exceptional circumstances": (1) when the magistrate issued it in reliance on a deliberately false affidavit; (2) when the magistrate abandons his or her judicial role and fails to perform in a neutral or detached fashion; (3) when the warrant is based on an affidavit so lacking in indicia of probable cause as to render an officer's belief in it unreasonable; and (4) when the warrant is so facially deficient, as by failing to particularize the place to be searched or the items to be seized, that no reasonable officer could believe it valid. Leon, 468 F.3d at 923.

Defendant argues that warrant in this case was facially deficient because it failed to particularly describe the evidence to be seized. Rather than a list of items to be seized, the warrant included the statement "Affiant requests the issuance of a search warrant to locate and seize all items listed in the affidavit." Defendant argues that this language is not sufficient to incorporate the affidavit.

The Fifth Circuit has explained that to incorporate an affidavit into the search warrant the Fourth Amendment requires "at the very least, a cursory reference to the affidavit upon which an executing officer may have to rely." See United States v. Beaumont, 972 F.2d 553, 561 (5th Cir. 1992). Such a reference exists here because the search warrant at issue explicitly stated that the affiant sought to "seize all items listed in

the affidavit."  See also Champ v. Malray, 2014 WL 1415203 (W.D. La. 2014) (Stagg, J.) (holding that the language "affiant wishes to seize any bullets, projectiles, pistols, handguns or clothing" satisfied the Fourth Amendment's particularity requirement).  Thus, it was not unreasonable for the officers to believe the warrant was valid.  The seizure of items not listed in the affidavit were found during a valid search incident to a probable cause arrest.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 25) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b).  A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections.  Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of July, 2022.

Mark L. Hornsby
U.S. Magistrate Judge